**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:08-CV-00148-M**

| | |
|---|---|
| **ERIC DUNN** | **PLAINTIFF** |
| **V.** | |
| **CINTAS CORPORATION NO. 2, et al.,** | **DEFENDANTS** |
| **and** | |
| **CINTAS CORPORATION NO. 2, et al.** | **THIRD PARTY PLAINTIFFS** |
| **V.** | |
| **MANPOWER, INC.** | **THIRD PARTY DEFENDANT** |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on third-party defendant Manpower, Inc.'s motion to dismiss Cintas Corporation No. 2, et al.'s third-party complaint seeking indemnification related to Eric Dunn's tort claims. Fully briefed, the matter is ripe for decision. For the reasons that follow, Manpower's motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff Eric Dunn worked at Dana Corporation in Owensboro, Kentucky as an employee of third-party defendant Manpower, Inc., an employment services company. Manpower rented a work shirt for Dunn from third-party plaintiff Cintas Corporation pursuant to a "standard uniform services agreement" dated June 20, 2005. That

1

agreement was signed at Manpower's Evansville, Indiana office, and apparently consisted of two pages. The first page discussed specific terms such as the price and quantity of the uniforms; the second page included a statement that "[Manpower] hereby agrees to defend, indemnify and hold harmless [Cintas] from any claims and damages arising out of or associated with this agreement." (Agreement, p. 2). The agreement was signed at the bottom of the first page by Manpower's local branch manager, Beth Sotolongo.

On December 3, 2007, Eric Dunn was injured when his work shirt caught fire while he was doing some welding for the Dana Corporation. Manpower, as Dunn's employer, paid him benefits associated with that injury pursuant to the Kentucky's Workers' Compensation Act, KRS § 342.001, *et seq*. On November 21, 2008, Dunn filed a lawsuit against Cintas, claiming that the uniform he was wearing at the time of the fire was defective because it was not flame resistant. Cintas filed a third-party complaint against Manpower on June 8, 2009, arguing that under the June 20, 2005 agreement Manpower owed Cintas a duty to indemnify and defend it against Dunn's claims. Manpower moves to dismiss the third-party complaint for failure to state a claim.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to [the plaintiff,]" League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief." Ashcroft v. Iqbal,

--- U.S. ----, 129 S. Ct. 1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). He cannot plead facts "merely consistent with a defendant's liability"; he must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949, 1950.

### III. DISCUSSION

Manpower argues that Cintas's third-party complaint should be dismissed for three reasons: (1) the indemnify and defend provision in the June 20, 2005 agreement is unenforceable because it follows Beth Sotolongo's signature and is not incorporated by reference; (2) the provision should not be enforced because it would undermine the immunity given to employers under the Kentucky Workers' Compensation Act, KRS § 342.001, *et seq*; and (3) the provision is unenforceable under the general law governing indemnity agreements. Cintas, for its part, argues that Indiana law, not Kentucky law, governs the contract; and it also says that Manpower's motion should be denied because Indiana does not have a state policy that would warrant dismissal of its claim.[1] The Court

---

[1] In addition, Cintas contends that dismissal is improper because the Court would have to look at matters outside of the third-party complaint. The Court disagrees. It is well-settled that courts may consider any materials attached to the complaint, matters of public record, or anything susceptible to judicial notice, without converting the motion into one for summary judgment. <u>Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.</u>, 462 F.3d 666, 670 n.4 (6th Cir. 2006). Here, it is enough that the Court can consider the contract and Eric Dunn's complaint, which are attached to Cintas's third-party complaint, and the Order Approving Settlement of

considers these arguments in turn.

>     A. Conflict of Laws

To determine which state's substantive law to apply, courts sitting in diversity look to the conflict of law rules of the forum state. Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941). Kentucky, the forum state in this case, uses the "most significant relationship test" outlined by the Restatement (Second) Conflict of Laws § 188. Wallace Hardware Co. v. Abrams, 223 F.3d 382, 391-92 (6th Cir. 2000) (citing Breeding v. Massachusetts Indemnity and Life Ins. Co., 633 S.W.2d 717, 719 (Ky. 1982)). Under that test, courts generally weigh the importance of: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.[2] Advanced Solutions, Inc. v. Chamberlin, 2007 WL 4215654, *6 (W.D. Ky. 2007).

More relevant here, however, is § 196 of the Restatement (Second) of Conflict of Laws. That section explains that courts dealing with contracts for services should apply "the local law of the state where the contract *requires that the services, or a major*

---

Dunn's workers' compensation claim, a public record.

[2] The Restatement also lists several policies that should guide the analysis: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. Id.

4

*portion of the services, be rendered*, unless . . . some other state has a more significant relationship . . ." Id. at § 196 (emphasis added).  This is because in a services contract "[t]he place where the services, or a major portion of the services, are to be rendered will naturally loom large in the minds of the parties . . . . [and] [t]he state where the services are rendered will also have a natural interest in them and indeed may have an overriding interest in the application to them of certain of its regulatory rules." Id. at Comment c.

Beyond this, the Court must also be mindful of Kentucky's well-noted "egocentri[sm] . . . concerning choice of law questions." Wallace Hardware Co. v. Abrams, 223 F.3d 382, 391 (6th Cir. 2000) (quoting Paine v. La Quinta Motor Inns, Inc., 736 S.W.2d 355, 357 (Ky. Ct. App. 1987); see also Johnson v. S.O.S. Trans., Inc., 926F.2d 516, 519 n. 6 (6th Cir. 1991) (broadly observing that "Kentucky's conflict of law rules favor the application of its own law whenever it can be justified.").  Even though Kentucky has adopted the "most significant relationship" test, that test tends, in practice, to favor application of Kentucky law to a contract issue "if there are sufficient contacts and no overwhelming interests to the contrary . . ." Harris Corp. v. Comair, Inc., 712 F.2d 1069, 1071 (6th Cir. 1983) (citing Breeding, 633 S.W.2d at 717).

Here, Cintas argues that under Kentucky's conflict of law rules Indiana law should apply to the June 20, 2005 agreement because the contract was signed in Indiana; at least one party is located in Indiana; and the shirts may have been cleaned in Indiana.  The Court does not agree.  The major portion of the services to be rendered pursuant to the contract was the provision of work shirts for use in the Commonwealth; the "Customer,"

5

as the contract says, "[was to] be serviced in Owensboro, Kentucky." (Agreement, p. 1); see Restatement at § 196. Moreover, the ultimate recipient of the service, Eric Dunn, was and is a Kentucky resident; he was injured during his employment with a Kentucky office of Manpower while working for the Dana Corporation in Kentucky; and he was compensated for that injury under the Kentucky Workers' Compensation Act. Because of this, the Court believes that the state with the most significant contacts to this case, and the state whose substantive law should therefore be applied, is Kentucky.[3]

B. Contract Question

Manpower's first argument is that the contract's indemnify and defend provision is unenforceable because it follows Ms. Sotolongo's signature and is not incorporated by reference above. The Court agrees. In Kentucky, courts have consistently held that parties are not bound by matters that appear below their signatures. See, e.g., J.P. Morgan Delaware v. Onyx Arabians II, Ltd., 825 F.Supp. 146, 149 (W.D. Ky. 1993) (concluding that a "Waiver of Defenses" clause on the reverse side of a purchase agreement that was signed on the front was ineffective); see also State St. Bank & Trust Co. v. Heck's Inc., 963 S.W.2d 626, 629 (Ky. 1998); R.C. Durr Co. v. Bennett Indus., Inc., 590 S.W.2d 338,

---

[3] After all, Kentucky has an interest in protecting the health and welfare of its citizens from dangerous products and services. See Tatum v. Hunter Engineering Co., 25 F.3d 1050, *4-6 (6th Cir. 1994) (table). It has an interest in ensuring that the immunity granted to employers by the Kentucky Workers' Compensation Act is not improperly avoided. And courts have found that Kentucky law should be applied where the event that triggers the alleged rights and duties of parties under a contract—here, Eric Dunn's work shirt catching fire in Owensboro—is located in the Commonwealth. See Blount v. Bartholomew, 714 F.Supp. 252, 256 (E.D. Ky. 1988); Breeding, 633 S.W.2d at 717.

339-340 (Ky. Ct. App. 1979).[4]  The only exception is where later terms and conditions are incorporated by an adequate, earlier reference.  See Hertz Commercial Leasing Corp. v. Joseph, 641 S.W.2d 753, 756 (Ky. Ct. App. 1982).

     Here, the indemnify and defend provision in the June 20, 2005 contract is not located above Ms. Sotolongo's signature on the first page of the contract; rather, it is located on a separate, second page.  In order for the indemnify and defend provision to be enforceable against Manpower, then, it must have been incorporated by reference above Sotolongo's signature.  It was not.  There is no mention of a duty to indemnify and defend—or, for that matter, any extrinsic duties or conditions—prior to Ms. Sotolongo's signature.  As a result, the Court finds that the indemnify and defend provision is unenforceable against Manpower under Kentucky law.  Because that provision is the sole basis of Cintas's third-party claim, the Court will grant Manpower's motion to dismiss the complaint.

---

[4] This preference is also reflected in KRS § 446.060, which requires written contracts to be signed "at the end or close of the writing." See KRS § 446.060(1) (2009).

## IV. CONCLUSION

For the foregoing reasons, Manpower's motion to dismiss is **GRANTED**.

cc. Counsel of Record